UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CORI L. SEYBERT<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No. CV 1:16-CV-00058-REB<br><br>**MEMORANDUM DECISION AND ORDER ON PETITION FOR REVIEW** |

Now pending before the Court is Petitioner Cori Seybert's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny her disability benefits.[1] This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

### I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

On March 26, 2013, Petitioner applied for Social Security Disability Insurance

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

("SSDI") benefits, alleging a disability onset date of October 15, 2012. (AR 13). Her claim was initially denied on April 13, 2013, and denied upon reconsideration on June 19, 2013. (*Id.*). Following these denials, the Petitioner also filed an application for supplemental security income ("SSI") benefits, on January 15, 2014, alleging the same disability onset date as her application for SSDI benefits. (*Id.*) The Petitioner thereafter requested a hearing before an Administrative Law Judge ("ALJ") as to both claims, which hearing was held by video-conference on April 22, 2014. (*Id.*). ALJ Ben Wilner presided over the hearing, at which the Petitioner was present and represented by Mario Davila, a non-attorney representative. A Vocational Expert, Kent Granant, gave testimony at the hearing, as did Petitioner herself. (*Id.*) At the time of the hearing, Petitioner was 41 years old and had past relevant work as a data entry clerk, sales clerk, and as a cosmetic demonstrator. (Petitioner's Brief, Dkt. 16 at p. 2).

On September 4, 2014, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 9-23). On October 1, 2014, Petitioner requested review from the Appeals Council. (AR 7.) The Appeals Council then denied review on December 9, 2015, (AR 1-6), making the ALJ's decision the Commissioner's final decision.

Petitioner now seeks judicial review of the Commissioner's decision to deny her benefits. Petitioner contends the ALJ erred by failing to accord proper weight to the opinion evidence in the file, particularly by disregarding the opinions of Petitioner's treating orthopedist as to her ability to sit for more than two hours at a time. Petitioner

**MEMORANDUM DECISION AND ORDER - 2**

also argues that the ALJ erred in finding that she was not fully credible as to the limiting effects of pain and other symptoms arising from primarily from her degenerative disc disease. (Petitioner's Brief at 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y. of Health & Human Serve.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a

**MEMORANDUM DECISION AND ORDER - 3**

whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

A.   **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20

**MEMORANDUM DECISION AND ORDER - 4**

C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that the claimant had engaged in part time work for part of the period for which disability benefits were sought, namely, from the fall of 2012 through May of 2013. While the ALJ concluded that these activities did not rise to the level of SGA, he also concluded that they might be probative of other issues, such as the claimant's true residual functional capacity and her credibility. (AR 14-15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social

**MEMORANDUM DECISION AND ORDER - 5**

Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: degenerative disc disease, with cervicalalgia. (AR 15).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that the claimant's impairments did not meet or exceed any of the listed impairments, either singly or in combination. (AR 15).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past

**MEMORANDUM DECISION AND ORDER - 6**

relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that physically, Petitioner retained the ability to perform sedentary work as defined in 20 C.F.R. 404.1576(a) and 416.967(a), with some limitations on climbing, crouching, stooping, balancing, kneeling, crouching and crawling, and overhead reaching. The ALJ also determined that Petitioner should not work in environments where she would encounter concentrated exposure to extreme heat and vibrations. (AR 15).

In the fifth step, if it is established that a claimant can no longer perform past relevant work because of her impairments, the Commissioner then must show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Halala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that Petitioner was capable of

**MEMORANDUM DECISION AND ORDER - 7**

performing her past relevant work as a data entry clerk, and therefore not disabled. (AR 19-20).

B.     **Whether the ALJ Improperly Rejected the Opinions of Treating Providers**

Petitioner's primary argument is that the ALJ erred in selectively relying upon unfavorable portions of the opinions of Dr. Manos, an orthopedic surgeon who treated Petitioner for back pain beginning in the summer of 2012, and failing to give Dr. Manos' opinions controlling weight as to portions of his opinions which were favorable to her.

In particular, Petitioner argues that the ALJ failed to give proper weight to Dr. Manos's opinions regarding Petitioner's inability to sit, stand, and walk for more than two hours at a time, which was central to her claim of disability. Petitioner alleges that the objective medical evidence (consisting of the MRI and x-ray findings) supported the restrictions identified by Dr. Manos, and that the ALJ was not free to substitute his own interpretation of those findings. Alternatively, Petitioner contends that even if Dr. Manos's opinions were not entitled to controlling weight, the ALJ still failed to properly weigh them according to the framework for other medical sources established in SSR 96-2p and 20 C.F.R. 404.1527 and 416.927. (Petitioner's Brief at p. 16). Finally, Petitioner argues that the ALJ also failed to give proper weight to the opinions of Jenny Stear, a physician's assistant.

1.     **Legal Standards Governing Assessment of Treating Doctor Opinions.**

In Social Security cases, both ALJs and courts reviewing an ALJ's decision "employ a hierarchy of deference to medical opinions depending on the nature of the

**MEMORANDUM DECISION AND ORDER - 8**

services provided." *Ryan v. Comm'r. of Soc. Sec. Admin,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing standard in dissent); *See also, Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). This hierarchy distinguishes among three types of physicians: those who treat the claimant, those who examine the claimant but do not treat her, and those who neither examine nor treat but simply review the medical evidence prepared by others and provide opinions as to the presence or absence of functional limitations. Generally speaking, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Ryan,* 528 F.3d at 1204. If a treating doctor's opinion is not contradicted in the record by the opinion of another doctor, an ALJ may reject it only for clear and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1198; *Lester,* 81 F.3d at 830. The ALJ must accord "controlling weight" to a treating doctor's opinion if medically approved, diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence in the record. *Ligenfelter v. Astrue,* 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). This standard of deference to the opinions of treating doctors does not, however, require an ALJ to accept the opinion of any doctor, including a treating doctor, that is "brief, conclusory, and inadequately supported by clinical findings." *Chaudry v. Astrue*, 688 F.3d 661 (9th Cir. 2012). An ALJ may also properly reject opinions of treating physicians where they are wholly based on the claimant's self-reporting and not backed up by any objective medical findings. *Turner v. Comm'r. Soc. Sec.,* 613 F.3d 1217, 1222-24 (9th Cir. 2010); *Thomas v.*

**MEMORANDUM DECISION AND ORDER - 9**

*Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

### 2. Dr. Manos's Medical Records

Petitioner first began seeing Dr. Manos at the Spine Institute in August 2012 for a variety of complaints, primarily low back pain and neck pain. (AR 254) At that time, plain film images revealed "mild" degenerative changes in her lumbar spine, and in her neck, "collapse of the disc space height at C5-C6 with anterior osteophyte formation." (AR 253). She returned to Dr. Manos in September of 2012, still apparently experiencing lower back pain, and was told to restrict her working hours to no more than four per day. (AR 242-243, 278). Office notes from that visit describe Petitioner's primary problems as being in both the lower back and in the cervical spine, "predominantly at the L5-S1and C5-C6 areas." At this point in time, Petitioner was participating in Zumba dance classes, playing softball, and working out. *(Id).* In October of 2012, around the time of her alleged disability onset date, she returned to the Spine Institute, reporting that she was tolerating the reduced workday well. (AR 264).

In January 2013, an MRI was performed, the report of which revealed "moderately severe" degeneration in the disc at the L5-S1 joint. There was also a "very mild disc bulge," and "mild bilateral facet posterior degenerative hypertrophy producing very mild bilateral foraminal stenosis." (AR 250). Following the MRI, Petitioner was offered physical therapy, which she declined initially due to her lack of insurance and later, after her husband obtained insurance, because she had not met her deductible and could still not afford the therapy. (AR 261).

**MEMORANDUM DECISION AND ORDER - 10**

In April of 2013 Petitioner reported that she was experiencing significant back and neck pain, but that she was able to tolerate a reduced (four-hour) work schedule well. (AR 486). The physician's assistant who saw her that day instructed her to limit her to lifting no more than ten pounds and to sit and stand for no more than thirty minutes at a time. (*Id.*). The next month, in May of 2013, Petitioner reported to Dr. Manos that she was still experiencing significant pain that had worsened somewhat, and felt she was unable to return to work. (AR. 285). Dr. Manos agreed that a leave of absence would probably help her, and recommended that she continue with a low impact exercise regimen. He also noted that her problems were exacerbated by sitting or standing for more than fifteen minutes at a time, and concluded that the degenerative changes at the L5-S1 joint were likely "her primary pain generator." (AR 285).

Dr. Manos also recommended a surgical intervention to address the problems at the L5-S1 joint, but noted that Petitioner was "reluctant to go that direction." (*Id.*). Petitioner returned again five months later, in October of 2013. (AR 291). During this visit, Petitioner reported neck pain as well as lower back pain, and said the medicines she had previously been taking were not working as well. In his notes for this visit, Dr. Manos indicated the best surgical option for Petitioner was a procedure known as an "anterior lumbar interbody fusion." (*Id.*). He filled out a "Summary Impairment Questionnaire" regarding Petitioner's spinal complaints. Jenny Stear, a physician's assistant, filled out a similar form for Petitioner several months later, in January of 2014. (AR 293-302). In these questionnaires, both Dr. Manos and Ms. Stear indicated that

**MEMORANDUM DECISION AND ORDER - 11**

Petitioner experienced problems with pain in *both* her back and her neck. Both providers also opined that Petitioner would be restricted to sitting and standing for no more than two hours out of an eight hour workday. (AR 296, 302). Each of them also indicated that Petitioner would miss approximately three days of work per month due to her back problems. (Id.).

### 3.     Discussion

In addressing the weight to be given to the opinions of Dr. Manos and Ms. Stear, the ALJ made the following observation:

> The claimant has submitted a number of opinions from her treating sources at the Spine institute of Idaho, Richard Manos, M.D., and Jenny Stear, P.A.-C. Initially the claimant was restricted by Dr. Manos to four-hour workdays with no lifting over ten pounds. In May 2013, Dr. Manos wrote that the claimant was "unable to tolerate a four hour workday," although no findings were noted, and this instead appears to be based on an uncritical acceptance of the claimant's own self-report of functioning. In September 2012, Ms. Stear completed an opinion which took the form of a preprinted document asking whether the claimant was 'disabled' or 'employable.' Ms. Stear checked 'disabled' and stated that the claimant was diagnosed with degenerative spondylosis. This restriction was not expected to last longer than twelve months.
>
> These first several opinions uniformly contain little to no citation to clinical findings to support their conclusions and they are not supported by the evidence, such as the lumbar MRI or the clinical examinations of the claimant's spine.
>
> In October of 2013, Dr. Manos opined that the claimant could sit for two hours out of an eight hour workday and stand/walk for two hours out of an eight-hour workday. She could lift up to ten pounds frequently and up to twenty pounds occasionally. No significant limitations in reaching, handling, or fingering were present. This treating acceptable medical source's opinion is given substantial weight, except as to the claimant's limitations in sitting. The objective medical evidence showed only "very

**MEMORANDUM DECISION AND ORDER - 12**

> mild" to "mild" degenerative changes in the lumbar spine. Rather the claimant's chief musculoskeletal issue pertains to her cervical degenerative disc disease. This impairment would not substantially impede her sitting ability.

(AR 21.)

The first two reasons the ALJ gave for discounting Dr. Manos's opinions have support in the record. The ALJ noted that Dr. Manos's initial opinion in May of 2013 that Petitioner should be limited to no more than a four hour workday was not based on any objective findings, but rather on uncritical acceptance of the claimant's self-reports of pain. This is a legitimate basis to discount a treating provider's opinion, particularly where, as here, an ALJ gives reasons to question a claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). An ALJ may also properly discount conclusory treating provider opinions, and discount opinions that do nothing to explain the facts and evidence upon which a claim of disability is based. *See, e.g. Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). For these reasons, the ALJ properly rejected Dr. Manos's initial opinions that Petitioner should be restricted to a four hour work day and Ms. Stear's conclusory opinion from May of 2013 that Petitioner was "disabled." (AR 289).

The ALJ was on less solid ground, however, when it came to his reasons for rejecting Dr. Manos's residual functional capacity assessment of October 2013, and in particular in rejecting the opinion that Petitioner could only sit and stand for two hours out of an eight hour work day. The ALJ rejected this particular aspect of Dr. Manos's opinion because the objective medical evidence showed only mild degenerative changes

**MEMORANDUM DECISION AND ORDER - 13**

in the lumbar spine. The ALJ also stated that "claimant's chief musculoskeletal issue pertains to her cervical degenerative disc disease" and reasoned that a cervical impairment would not impair her ability to sit.

This reasoning, even if abstractly logical enough on the surface, is not supported by substantial evidence in the record. The ALJ's apparent belief that Petitioner's primary complaint pertained to her cervical degenerative disease and that her lumbar pain was only a secondary concern was plain error that requires a remand. When the claimant initially visited Dr. Manos she was complaining of both cervical and lower back pain. Plain films taken of both of these spinal regions revealed degenerative changes, albeit mild ones, at both locations. However, the MRI obtained at a later date (of the lower spine) showed that the degenerative changes at the L5-S1 joint were "moderately severe." Complaints of neck pain did continue to be mentioned in the records, but the only surgical intervention that Dr. Manos recommended was for the lumbar spine, not the cervical spine. Dr. Manos also described the degenerative changes at L5-S1 as the claimant's "primary pain generator." Yet, the ALJ apparently concluded that it was Petitioner's cervical spine, rather than her lumbar spine, that was her primary problem. That conclusion is erroneous in that it is not supported by any reasonable reading of the record. The error was not harmless, because the ALJ's mistaken assumption as to the nature of Petitioner's primary complaints was the sole reason he gave for discounting Dr. Manos's opinions about her inability to sit for long periods of time.

Were it possible to read the record to conclude, as the ALJ did, that Petitioner's

**MEMORANDUM DECISION AND ORDER - 14**

cervical complaints were in fact her primary musculoskeletal complaint, then there would be a basis to defer to the ALJ's conclusion that these impairments would not substantially impede Petitioner's sitting ability. However, the record actually discloses that degenerative changes in the *lumbar* spine were of greater concern to Dr. Manos than the problems in her neck. Degeneration in the lumbar spine as opposed to the cervical spine obviously presents a much greater likelihood that a claimant will have trouble sitting for long periods of time. For this reason, the ALJ's apparent misunderstanding about Petitioner's primary spinal difficulties requires a remand.

Any analysis conducted on remand should also include an evaluation of Ms. Stear's RFC assessment conducted in January of 2014. Because Ms. Stear's findings in this assessment tracked substantially with Dr. Manos's from a few months earlier, it is fair to surmise that the ALJ rejected them (as he did Dr. Manos's) out of the mistaken belief that cervical disk degeneration was the primary musculoskeletal complaint. Because that finding was error, Ms. Stear's opinions should be considered in light of the factors set forth in Social Security Ruling 06-03p.[2]

Petitioner also assigns reversible error to the ALJ's failure to specifically address Dr. Manos's opinion that Petitioner would be likely to miss three or more days of work

---

[2] SSR 06-03p provides that although the opinions of medical providers who are not "acceptable medical sources" are not entitled to controlling weight the way opinions of treating doctors are, the opinions of such provider are still "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."

**MEMORANDUM DECISION AND ORDER - 15**

per month due to her back pain. (AR 302). The Commissioner suggests that even if this failure was error, it was harmless because it is evident when the ALJ's decision is read as a whole that he intended to also reject Dr. Manos's findings as to the number of absences Petitioner's condition would require. (Commissioner's Brief, Dkt. 17 at p. 4). The Court, however, will not simply assume that the ALJ intended to reject an opinion about which his decision is silent, particularly in light of his mistaken reading of the medical records discussed above.  Given that the vocational expert testified that an individual who missed work two or three times per month could not hold down competitive employment, (AR 64), this aspect of Dr. Harris's opinion was potentially critical. Therefore, this aspect of Dr. Harris's opinion should also be considered on remand as well.

### C.  The ALJ's Credibility Determination

Because the Court concludes that the ALJ erred in his assessment of Dr. Manos's opinions, and because that error was plainly not harmless, the Court will not address issues surrounding Petitioner's credibility in great depth except to note that here, the ALJ was likely on firmer ground than when it came to rejecting Dr. Manos's opinions. The Court notes, for example, Petitioner's arguments on the credibility issue all but ignore one of the ALJ's primary reasons for finding Petitioner less than fully credible: the fact that she was not initially candid with the ALJ about work that she had performed during the period for which she was claiming disability. (AR 20). Petitioner's earnings records made clear that she had worked partial shifts from the fall of 2012 through May of 2013, but

**MEMORANDUM DECISION AND ORDER - 16**

when initially questioned about these earnings, she disclaimed knowledge of them. (AR 20). After the hearing the Petitioner submitted a letter to the ALJ explaining that she had simply forgotten about these partial shifts due to the passage of time. However, the ALJ was not convinced by this explanation because less than a year had elapsed between the last paycheck she had received and the date of the hearing. (AR 20). The ALJ ultimately concluded "the claimant's lack of candor when asked a question she perceived as potentially unhelpful to her claim leads to serious reservations about the reliability of the claimant's testimony generally." (AR 20).[3]

The existence of issues surrounding a Petitioner's credibility–however concerning and valid those credibility issues might be–does not absolve the ALJ of the responsibility to evaluate the medical evidence in the record in a manner that comports with the applicable legal standards. Here, as explained above, the ALJ erred by finding that Petitioner's primary musculoskeletal complaint related to her cervical spine when her treating doctor had identified her lumbar spine as her "primary pain generator." The fact that Petitioner herself may have been less than fully credible does not erase this error, and substantial evidence does not otherwise support the ALJ's decision.

---

[3] The ALJ also gave several other reasons in support of his adverse credibility determination, including: 1) the fact that Petitioner gave no documentation to support her claim that she could not afford physical therapy and other treatments; 2) the fact that her reasons for foregoing treatments changed over time; 3) the generally conservative nature of the treatments provided compared to the allegations of severe and disabling pain; and 4) inconsistencies in her testimony at the hearing as to the length of rest breaks necessary to get through a day. Finally, the ALJ noted that claimant's alleged symptoms were less than fully credible because they deviated from the objective medical evidence. (AR 20).

**MEMORANDUM DECISION AND ORDER - 17**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  See *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  See *Key*, 754 F.2d at 1549. However, as stated herein, the reasons given by the ALJ in support of his determination that cervical pain as opposed to lumbar pain was Petitioner's primary problem simply does not find support in the record.  It is for this reason that it is necessary to remand this action for further consideration by the ALJ. Because a remand is necessary despite the issues surrounding Petitioner's credibility, the Court does not make specific findings on credibility issues at this time. Rather, the appropriate course of action is to remand this case to the Commissioner for further proceedings, so that an ALJ may review the medical opinion evidence in light of the discussion in Section III-B, above. The ALJ is free, on remand, to make any findings regarding credibility that he or she may feel the evidence warrants.

## V.  ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is **GRANTED.**  The Commissioner did not give clear and convincing reasons supported by substantial evidence in the record for the decision to disregard Dr. Manos's opinion that the Petitioner could only sit and stand for two hours out of an eight-hour work day. Accordingly, this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

**MEMORANDUM DECISION AND ORDER - 18**

Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 30, 2017**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**